No. 19,469.

L. IRENE WHITE, *Appellee,* v. M. L. KINCADE et al. (THOMAS LYNN, *Appellant*).

SYLLABUS BY THE COURT.

1. MECHANIC'S LIEN—*Mortgages—Priorities.* An owner who contracted to sell a tract of land placed the purchaser in possession of the same, and before the transaction was closed and the legal title transferred he authorized the purchaser to have certain improvements made on the land, and the purchaser contracted for and had the improvements made and those who furnished the material and labor therefor claimed a lien on the land. After the owner had authorized the improvements he caused a deed, which his grantor had executed in blank, to be delivered to the purchaser with the name of the purchaser inserted therein as grantee, so that on the record the land appeared to have been directly conveyed from his grantor to his vendee, and at the same time he took a mortgage from the purchaser for the balance of the purchase price. *Held,* that the mechanic's lien is prior to the mortgage lien executed by the purchaser and that the mechanic's lien covered the interest which both the owner and the purchaser held in the land.

2. SAME—*Mistake in Stipulation—Equitable Powers of Court.* It is competent for a court, in the interest of equity and justice, to relieve parties from stipulations inadvertently, mistakenly or fraudulently made and entered into by them. The exercise of this power is largely a matter of discretion, and it is held that there was no abuse of discretion in the relief granted in this instance.

Appeal from Finney district court; GEORGE J. DOWNER, judge. Opinion filed May 8, 1915. Affirmed.

R. W. *Hoskinson,* and *Albert Hoskinson,* both of Garden City, for the appellant.

*William Easton Hutchison,* and *C. E. Vance,* both of Garden City, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J. : This action was brought by L. Irene White to foreclose a mechanic's lien on a tract of land upon which a well had been sunk by the United Well Works. It appears that the land was purchased by M. L. Kincade from H. C. Wiley on December 8, 1910, but the conveyance to him was not recorded until October 23, 1911. Kincade contracted for the well on August 29, 1911, and, according to a stipulation, work was commenced on the well on September 8 and it was completed on September 19, but it is claimed that there was an error in the stipulation and that the date of completion was October 19, 1911. The work and labor expended on the well amounted to $4148.80 and all of this amount was paid by Kincade except $2545.56, for which he gave his note falling due December 12, 1912, and as it was not paid a mechanic's lien statement was filed January 20, 1912. The note was transferred by the United Well Works to the plaintiff. It appears that Wiley purchased the land in question from E. J. Dierks, who executed a deed on December 17, 1910, but no grantee was named in the conveyance, and when Wiley subsequently sold the land to Kincade he entered Kincade's name as grantee in the Dierks' deed and made a delivery of the instrument on October 21, 1911. On the same day Kincade executed four notes in favor of Wiley, each for $2000, due in one, two, three and four years respectively after date, and one note for $2726.20 due five years after date, and these notes were secured by a mortgage on the land which was executed on October 21, 1911, and recorded on October 23, 1911. The notes and the mortgage were transferred by Wiley to Thomas Lynn, the defendant, who answered and set

up the claim that his mortgage lien upon the land was prior and superior to the mechanic's lien of the plaintiff. The judgment of the court was that plaintiff was entitled to a first lien for $2929.83, and that the defendant Lynn should have a second lien on the land for $12,032. Lynn complains, and the priority of the liens is the only question presented on this appeal.

It is argued that the debt secured by the mortgage was for the unpaid purchase price of the land, but the defendant in his answer made no such claim but based his right to a lien alone on the mortgage as it was recorded on October 23, 1911. It appears that Wiley allowed the record title to remain in Dierks until the conveyance was made to Kincade, and from the record it appeared that Kincade became the owner of the land at the date of the Dierks' deed and that it was transferred directly from Dierks to Kincade. While the testimony is to the effect that Wiley purchased the land from Dierks and had an equitable title to it when the purchase was made by Kincade, and while there is room for an inference from the testimony that the secured notes were given as part of the price of the land, Wiley, according to the evidence, effectually estopped himself to claim priority over the mechanic's lien. He not only eliminated himself so far as the record title is concerned, but after contracting to sell the land and before the conveyance was made he not only consented but procured Kincade to make an expensive improvement on the land. Kincade, who had been in possession of the land from March, 1911, hesitated about undertaking an improvement which was to cost over $4000 for the reason that he had only about $1000 which he could put into an improvement of that kind. Wiley advised Kincade to make the improvement and said that he would see him through with it or provide for finishing it. Kincade paid more than $1500 towards the completion of the well. In view of the general findings Kincade's testimony must be accepted as true, and according to

the testimony Wiley authorized Kincade to contract for the digging of the well and the making of the improvement. In contracting for labor and material for that purpose he represented and bound Wiley as well as himself. A vendor of land who induces one who has contracted to purchase it to expend labor and material in improving the land can not defeat the claims for a lien of those who contribute their labor and material to enhance the value of his property. In such a case, in the absence of a controlling agreement, he can not insist that the mechanic's lien shall be subordinate to his mortgage subsequently given for the unpaid purchase price of the land when the sale is completed and the title transferred. (*Drug Co. v. Brown,* 46 Kan. 543, 26 Pac. 1019; *Shearer v. Wilder,* 56 Kan. 252, 43 Pac. 224; *Lumber Co. v. Band Co.,* 89 Kan. 788, 132 Pac. 992; *Hill v. Gill,* 40 Minn. 441, 42 N. W. 294; *Pickens v. Plattsmouth Inv. Co.,* 37 Neb. 272, 55 N. W. 947.) A different rule would apply if there was no consent or authority for the improvement by the vendor or owner of the property.

It is insisted that the mechanic's lien should not be extended, in any event, beyond the particular interest held by Kincade at the time the contract for the improvement was made. Ordinarily a party can only subject the interest held by himself to a lien, and if Kincade had proceeded to make the improvement solely on his own responsibility there would be force in the contention of the defendant. Here, however, the improvement was contracted for and made on what is deemed to be the consent and authority of the vendor, and that being the case a lien arose on his interest as well as on that of the purchaser. In *Henderson et al. v. Connelly,* 123 Ill. 98, 14 N. E. 1, 5 Am. St. Rep. 490, a purchaser of land was authorized by the vendor to contract for an improvement on the land sold, and it was held that the workmen who made the improvement were not limited to a lien upon the interest of the pur-

chaser but that the interest of the owner was also subject to a lien. (See, also, *Pickens v. Plattsmouth Inv. Co.*, supra; 27 Cyc. 252; Phillips on Mechanics' Liens, 3d ed., § 69.)

There is a further complaint that the plaintiff was permitted to show that the improvement was completed at a later date than the date fixed by the stipulation signed by the parties and that the change vitally affected the validity of the lien. It was stipulated that the improvement was completed on September 19, 1911, and the court allowed plaintiff to show on the trial that a mistake had been made in the date and that the work was finished on October 19, 1911. It was shown that the one who wrote the stipulation inadvertently wrote the word September instead of October. In the lien statement the date of completion was stated to be October 19, 1911, and the writer of the stipulation intended to copy the date from that document but mistakenly inserted September for October. Good grounds for relieving the plaintiff from the stipulation were shown. Courts are warranted in relieving parties from stipulations which have been improvidently or mistakenly made or where they are the result of fraud. Considerable discretion is vested in the courts as to whether the relief shall be granted, depending largely, of course, on the facts and circumstances of the case. The action of the court in this instance was in the interest of equity and justice and it can not be said that there was any abuse of discretion. A case-note citing many authorities on the power and discretion of the court with respect to relieving parties from the consequences of stipulations may be found in Ann. Cas. 1912C, 769.

The judgment of the district court is affirmed.