KIMBALL BROS. COMPANY, Appellant, v. L. F. FEHLEISEN, Appellee.

MECHANICS' LIEN: Improvements by Vendee. Real estate is subject to a mechanics' lien for improvements placed thereon by a vendee under a contract for a deed, and with the express or implied consent and authority of the holder of the legal title. In such case, both the equitable and the legal title holder is an "owner," within the mechanics' lien law.

PRINCIPLE APPLIED: A commercial club, in order to induce the location of a manufacturing company, procured two lots, and contracted with the company to cause a $7,500 building to be built on the lots for the company. The company agreed to repay the $7,500, and then receive a deed to the lots. The lots were deeded to one F, who then contracted with the company to build the building and pay therefor to the amount of $7,500. The company desired extras to the amount of $657, and agreed to pay therefor. The company agreed to repay F at the rate of $100 per month, and then receive a deed from F. The company and F also contracted with a contractor for the erection of the building. The plans and specifications, *which provided for a freight elevator,* were part of this contract. The building was built accordingly. Neither the $7,500 nor the $657 included the cost of the elevator. The building was completed, and F was compelled, owing to the inability of the company, to pay the entire $8,157. Before such completion. the company, without any consultation with F, ordered the elevator. F had never agreed to pay for an elevator, but knew at all times that the company intended to install one. He saw it when it arrived, and did not object. It was duly installed. The company never repaid anything to F on its contract, and he duly declared the contract forfeited.

*Held,* the lots were subject to a mechanics' lien for the elevator.

*Appeal from Boone District Court.*—R. M. WRIGHT, Judge.

NOVEMBER 22, 1918.

SUIT to foreclose a mechanics' lien resulted in dismissal of the petition. Plaintiffs appeal.—*Reversed.*

*Kimball & Peterson* and *Goodykoontz & Mahoney*, for appellant.

*Whitaker & Snell*, for appellee.

LADD, J.—This is an action to foreclose a mechanics' lien filed by plaintiff against lots on which a building had been erected. The plaintiff furnished an elevator at the price of $345 to the New-Lite Manufacturing Company, and seeks to foreclose its mechanics' lien for that amount. To understand the precise issue, it will be necessary to state the facts somewhat in detail.

On October 9, 1914, the Boone Commercial Association entered into a contract with the New-Lite Manufacturing Company, by the terms of which the company undertook to move its manufacturing plant and business from Newton to Boone, upon the completion of a building erected at the latter place in which to carry on said business,—said building to cost not to exceed $7,500, and to be located on Lots 4 and 5 in Block 17 in Fairview Addition to Boone, Iowa. The company was to repay the $7,500 to the party furnishing the same, with interest thereon at 7 per cent per annum, at not less than $100 per month until fully paid, and was to receive a warranty deed to said lots upon completion of said payment, together with abstract showing merchantable title free of incumbrance, and was to pay the taxes and keep the building insured. Upon the 30th of October following, the New-Lite Manufacturing Company entered into an agreement with the defendant, L. F. Fehleisen, reciting that the agreement previously mentioned had been entered into, and providing for the erection of a building, by the terms of

which the defendant undertook to "erect a building in substantial accordance with plans and specifications to be agreed upon and in accordance with the contract entered into between the first party herein and the Boone Commercial Association at the estimated cost of not to exceed $7,-500, it being understood and agreed that in event the said first party (New-Lite Manufacturing Company) shall elect to furnish additional funds for the erection of said building, it shall have the privilege of doing so,"—the building to be constructed "on the lots above described and title to be taken in the name of defendant. The said first party further agrees that it will repay to second party the entire sum expended by him for erection of said building at the rate of not less than $100 per month from the time said building is ready for occupancy, with interest accruing thereon at 7 per cent per annum, payable semi-annually, and when the entire sum expended by said second party and accrued interest thereon shall have been paid by first party, then said second party shall convey unto first party title of said premises." It is then recited that this contract is in pursuance of that above referred to, and is intended to effect compliance therewith.

On the 18th of November following, one Henry, as party of first part, and the defendant, Fehleisen, and the New-Lite Manufacturing Company, party of the second part, entered into a contract, by the terms of which Henry undertook to provide all materials and perform all work in the construction of the factory building contemplated by the previous contracts, "as shown on the drawings and described in the specifications prepared by C. C. Dawson of Des Moines, Iowa, which drawings and specifications are identified by the figures of the parties hereto. and become hereby a part of this contract." Under Article 9 of this contract, it was "agreed between the parties hereto that the sum to be paid by the owner to the contractor for said

work and material shall be eight thousand one hundred and fifty-seven ($8,157.00) dollars, seven thousand five hundred ($7,500.00) dollars to be paid by Louis F. Fehleisen, six hundred and fifty-seven ($657.00) dollars to be paid by the New-Lite Manufacturing Company subject to additions and deductions as hereinbefore provided." The building was completed, as per Henry's contract. The defendant paid what he had agreed to, and also the $657 which the company undertook to pay; and, on March 1, 1915, the company executed its note for that amount, payable June 1st following, to the defendant. The plaintiff, Kimball Brothers Company, had entered into a contract with the New-Lite Manufacturing Company on February 16, 1915, by the terms of which said plaintiff undertook to furnish one double-belt freight elevator, constructed according to specifications, in running order, by March 1st following, freight prepaid, and delivered f. o. b., at the price of $345. It was not delivered or installed until some months later, and after the contract of purchase had been entered into. As the New-Lite Manufacturing Company failed to make its payments on the contract of sale, as stipulated, defendant, on August 12, 1915, caused notice of forfeiture to be served on that company, and took possession of the premises. This divested any interest of the New-Lite Manufacturing Company in, or claim to, the property. When the elevator was delivered to and installed for that company, the contract of purchase was in force, and the vendee therein was "owner," within the definition of Section 3096 of the Code, which declares that:

"Every person for whose use or benefit any building, erection or other improvement is made, having the capacity to contract, including guardians, shall be included in the word 'owner' as used in this chapter."

If the elevator was for the use or benefit of the vendor, he, too, then, must be regarded as owner. Were the elevator acquired and installed without the consent or au-

thority of defendant, he could not well be regarded as owner, and the property would not be subject to a mechanics' lien. *Hickox v. Greenwood*, 94 Ill. 266. This is for the reason that, as liens are incumbrances upon the owner's property, they can only be created by his consent or authority. This was pointed out in *Henderson v. Connelly*, 123 Ill. 98 (14 N. E. 1), where the court, after alluding to a vendor in no manner connected with the building which the purchaser had erected on the premises, leaving it with the purchaser to improve it or not, as he might desire, proceeded:

"Under such circumstances, of course, the lien of the mechanic would only attach to such title as the purchaser held, and the vendor could not be required to part with his title until the purchase money was paid. But the case made by this record is entirely different, and must be controlled by other principles. Here it was understood in the contract of sale between the vendors and purchaser that the latter should go on and build upon the premises; and, for the purpose of a consummation of this understanding, a clause was inserted in the contract of sale by which the vendors agreed to advance the purchaser $875, to assist him in the erection of a building on the premises, as the building progressed. The only reasonable and fair construction to be placed on this clause of the contract is that the purchaser was authorized and empowered by the vendors to enter into contracts with builders to furnish material and erect a building on the premises to which they held the legal title. If, therefore, the Hendersons authorized and empowered Sharp, the purchaser, to cause a building to be erected on property where the legal title was in them, upon what ground can they now, after the labor has been expended and materials furnished, claim that the mechanic who furnished the labor and materials which they, by the contract, authorized, shall look alone to the

title held by the purchaser? Certainly, no principle of equity or fair dealing would sanction a precedent of that character. Had the contract of sale contained no provision looking in the direction of any improvement on the property, and had Sharp, the purchaser, gone on upon his own responsibility, and assumed a liability with a builder, then we would have no hesitation in holding that the lien of the mechanic must be confined to the interest of the purchaser in the premises, as was done in the *Hickox* case; but such was not the case here. The vendors, by their contract, have subjected their title to the property to the lien of the petitioner, and the decree properly, in our opinion, authorized a sale of the legal title and a priority of payment to petitioner."

In *Hill v. Gill,* 40 Minn. 441 (42 N. W. 294), the Supreme Court of Minnesota, in dealing with the same subject, said:

"The lien adjudged by the court in this instance, being an incumbrance upon the title and interest of Mrs. Gill, the owner in fee simple, could alone be created, and can only be sustained, by determining that she consented to and authorized it. It is upon this ground solely that liens can be supported. The basis of the right to enforce a claim of lien is the consent of the owner. *O'Neil v. St. Olaf's School,* 26 Minn. 331 (4 N. W. 47). And it is fundamental that, as liens are incumbrances upon the owner's property, they can only be created by his consent or authority. *Meyer v. Berlandi,* 39 Minn. 438 (40 N. W. 513). It must be admitted that, upon the furnishing of these materials, the plaintiffs had, under Section 1, Ch. 90, supra, the right of lien upon the building about to be erected, and upon whatever interest Barker then had in the real estate, and that his surrender of the premises could not deprive them of this clear legal right. But the court went further than to direct a sale of Barker's interest, and adjudged that Mrs. Gill's

rights in the land and its appurtenances should be sold to satisfy a debt incurred by her vendee, in which she had no voice, except by implication, and as one of the parties to a contract in which she imposed upon the other party an ob-. ligation to build upon realty to which she held the legal title.   It is this feature of the decree which is complained of. · In *Laird v. Moonan,* 32 Minn. 358 (20 N. W. 354), the principle is announced that all who have contributed to increase the value of property by consent of the owner, or in pursuance of a contract with him for that purpose, should have an interest in it for the satisfaction of their claims, and we think the proposition fully as sound and just when applied to the circumstances of this case as it was when stated in an action involving the right of a subcontractor to enforce the lien secured him by Section 2, Ch. 90, supra.   This case should not be confounded with one wherein a vendor has in no manner authorized or directed an improvement upon realty which he has agreed to convey."

See, also, *White v. Kincade,* 95 Kan. 466 (148 Pac. 607) ; *Miller v. Davis,* 26 Colo. App. 483 (145 Pac. 714, 715) ; *Lee v. Gibson,* 104 Tenn. 698 (58 S. W. 330) ; *Paulsen v. Manske,* 126 Ill. 72 (18 N. E. 275) ; *Bohn Mfg. Co. v. Kountze,* 30 Neb. 719 (46 N. W. 1123).

To bind the vendor's interest or title in the land, then, the improvement must have been made by his inducement or on his authority, express or implied; and we are of opinion that such consent and authority are clearly shown by the record.   It will be observed that the plans and specifications were attached to and made a part of the contract for the construction of the building, and that this contract was signed by the defendant.   The evidence discloses that the building to be erected was designed and built so as to necessitate the installation of an elevator of a character

like that furnished by plaintiff. The contractor testified that:

"A penthouse was erected on the top of the roof, so as to allow the space for the drums and things up above the roof, and allow ceiling room below in the second floor. The construction of the penthouse was with the idea of install-ing an elevator,—there could be no other purpose for its erection. The hatchway openings were provided for in the original blue print; but we left those out until Mr. Ogg, the president of the New-Lite Manufacturing Company, had bought the elevator and cut it to the size he wanted, and cut out the openings to fit the elevator. * * * Mr. Fehleisen used to drop round the building quite frequently, and saw how we were getting along,—probably every other day, on an average,—and during the time of the elevator installation, as well. I installed the elevator under Mr. Ogg's instructions. I filed a mechanics' lien on the proper-ty about May, 1915, for a part of the work over and above the contract. It was afterwards settled, and was assigned to Mr. Fehleisen, who is the owner of the lien and property at this time. Provision for the penthouse and hatchway was shown on the original blue prints. * * * The build-ing was pretty well finished when I commenced to install this elevator. * * * I don't remember whether we nailed or bolted the heavy timbers to which the timbers were fastened to the penthouse. It was a frame penthouse, and did not come with the elevator. There is a pit two feet deep, so that the elevator platform comes level with the floor. If taken out on the second floor, it would leave an opening about a foot wider than the elevator. The entire penthouse and timbers to which the timbers of the elevator were bolted, would be of no use. The shaft of the elevator was run by an electric motor; the machinery that ran the elevator up and down was connected to the shaft by belting that ran upon the ceiling of the first floor to the motor.

The drum up to the penthouse was operated by cable, which ran over it. The way that building is constructed is for the purpose of a factory. The only way to get heavy materials or weighty matter from the first to the second floor and from the second to the first floor without the use of the elevator, is to take them up a stairway. They were not built for that purpose. If any large, bulky articles were to be manufactured in the building in the future, there is no other way to get them up and down, except by the elevator or through the elevator."

The contractor, Henry, then, was required to so construct the building as to leave a place for the elevator; and as so made, the elevator became necessary for use of said building for the manufacturing purposes for which defendant and the New-Lite Manufacturing Company erected it. Though defendant was not consulted with reference to the purchase of the elevator, and was not to contribute toward payment therefor, he saw it, when delivered and being installed, and made no objection thereto. But he did know that it was the intention of the New-Lite Manufacturing Company to put an elevator in, and that, in the construction of the building, an elevator was contemplated and required for its use and enjoyment. Moreover, he paid the contractor, Henry, for services in installing the elevator, though taking over an assignment of the mechanics' lien he had filed. It is impossible to avoid the conclusion that defendant, in contracting for the construction of the building, had in view the purchase and installation of the elevator, and that he was party to an arrangement by which this was exacted of the New-Lite Manufacturing Company. The latter undertook to move its manufacturing plant and entire business from Newton, Iowa, to Boone, Iowa, upon the completion of the building to be erected for such purpose, "and to operate said business continuously in Boone, Iowa, thereafter." Defendant undertook to furnish $7,500 toward

the erection of the building, and to his knowledge, any additional amount was to be furnished by that company. By the construction of a building such that an elevator was essential to its completion, the company was forced to put that in, in order to operate its business therein, as agreed with the Boone Commercial Association. Defendant, then, not only consented to the procurement of the elevator, but was a party to the creation of a situation which compelled the New-Lite Manufacturing Company to install it.

A vendor of real estate, who induces one who has a contract to purchase same, to expend labor and material in improving the same, cannot defeat the claims for a lien by those who contribute their labor and material to enhance the value of his property. In such a case, in the absence of a controlling agreement, he cannot insist that the mechanics' lien shall be subordinate to his title or interest in the realty.

We are of opinion that the trial court erred, and that decree of foreclosure should have been entered, as pleaded. —*Reversed.*

PRESTON, C. J., EVANS and SALINGER, JJ., concur.