No. 24,843.

A. C. MENDENHALL and J. S. WINKLER, Partners, *Appellees*, v. VERDIGRIS RIVER PRODUCING COMPANY, C. E. STONESIPHER et al., *Appellants*.

SYLLABUS BY THE COURT.

MECHANIC'S LIEN — *Oil and Gas Property — Labor Performed on Lease by Contractors Employed Through Agencies Authorized by Owner of Property.* S was the owner of a tract of land upon which he had five oil wells and considerable oil-producing material and equipment. He contracted to sell the material and equipment and an oil and gas lease on the land and wells to W on monthly payments. The contract and lease were put in the bank, the lease to be delivered when final payment was made. By the terms of the contract and lease W was to take immediate possession of the premises and was required to drill five new wells within a year and to begin drilling within thirty days from the date of the contract and lease. Time was made the essence of the contract as to the deferred payments and as to the performance of the conditions of the contract and lease. The initial payment was made but none thereafter. Before and after default in payment S urged that the work go on, that a well be drilled; suggested to W a driller to employ; advanced some money for the work and otherwise busied himself to see that the provisions of the contract and lease pertaining to the development of his land were carried out. W made a drilling contract with M and W, who drilled a well on the land. *Held,* that the court was

justified in finding that S had made W his agent for the purpose of employing the drillers, and further *held*, that the drillers M & W were entitled to a lien under R. S. 55-207 to 55-210, upon the oil-producing material and equipment on the premises.

Appeal from Woodson district court; ROBERT E. CULLISON, judge. Opinion filed April 5, 1924. Affirmed.

*G. H. Lamb,* and *W. E. Hogueland,* both of Yates Center, for the appellants.

*John J. Jones, James A. Allen,* and *James W. Finley,* all of Chanute, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is a suit to foreclose a mechanic's lien on oil and gas property. It was tried to the court and judgment was rendered for plaintiff.

C. E. Stonesipher was the owner of a tract of land situated in Woodson and Greenwood counties on which there were five oil wells and considerable oil and gas equipment, which was also owned by Stonesipher. On August 26, 1919, he entered into a written agreement with W. E. DeYarmett, A. I. Holtum, and others, by which he agreed to lease to them his lands and oil wells thereon and to sell to them the oil and gas equipment (except certain casing, etc., specifically reserved) on the premises, a list of which was attached to the contract, for the sum of $32,000, of which $5,000 was to be paid cash and the balance in monthly payments of $5,000 each, except the last payment, which was to be $7,000, on the 26th of each month thereafter. The agreement further provided:

"Said lease to be executed and deposited in the Toronto State Bank in Toronto, Kansas, to be delivered upon the completion of the purchase price. It is hereby agreed that if second party fails to pay any payment provided herein to be paid, to perform any of the covenants contained in said lease, time being the essence of this agreement, at the time indicated, first party shall retain all payments made as liquidated damages, and this contract shall be at an end, and first party shall receive back his oil and gas lease. Upon the completion of said payments, said second party shall become the owners of all said five wells, subject only to first parties' right to the royalty therefrom, as provided in said lease. An itemized list of the pipe, casing and fixtures, which second party shall receive and become the owner of, is hereto attached, marked 'B' . . . It is agreed that the second party shall have possession of the property purchased for the purpose of operating said lease, but the title thereto shall not pass until full payments provided herein to be made are fully paid."

The lease, though not executed, was drawn, dated August 26, 1919, and contained among other things, these provisions:

"Said lessee to commence drilling for oil or gas within thirty days from date hereof and so continue development of said lease as rapidly as possible and to drill at least 5 wells first year and protect all side lines by drilling off-set wells. . . . The failure on the part of the lessee to perform all the conditions on his part herein as to development make this lease and payments indicated in contract of sale null and void."

The first $5,000 payment was made and the lease and contract were placed in the bank. DeYarmett, Holtum and associates went into possession of the premises under their contract and did some work thereon repairing an engine, building a belt house and moving and repairing oil tanks. On October 3, 1919, styling themselves the Verdigris River Producing Company and representing themselves "as the owners of the oil and gas rights hereinafter described" they made a written contract with Mendenhall & Winkler, partners, oil and gas well drillers, to drill four wells and clean out the old wells on the Stonesipher land. The work on each well was to be paid for before a new one was started.

The drillers, soon after making their contract, went upon the premises and drilled one well and did some work on one or more of the old wells. The work continued until about February 18, 1920, when the drillers quit because they were not being paid. They were paid in part but claimed a balance due of $3,251.50, for which they filed the lien foreclosed in this suit.

DeYarmett, Holtum, and associates paid Stonecipher $5,000 at the time the contract with him was made, but made no other payments. Neither that contract nor the lease put in the bank were ever recorded in the office of the register of deeds. On May 11, 1920, Stonesipher gave DeYarmett and associates written notice that their agreement of August 26, 1919, was null and void as default had been made in the payments and other covenants and the agreement was at an end and that he had taken possession of his property as provided in the agreement.

The evidence disclosed that DeYarmett and his associates did not live at Toronto and that Stonesipher took an active interest in assisting to supervise the work done on his premises. On September 11 he wrote DeYarmett among other things:

"Your Mr. Taylor Lovejoy of Garnett arrived to-day to take over the lease. . . . I will help him get started and do all I can to make it satisfactory for him, but in case he does not like it here, or does not meet with

your approval, I believe I can arrange to get Mr. McCoin . . . This is only a suggestion, and we can work it out later. I think it will be necessary to get a new belt at once for the power, and I would get one that would do for a larger power when you install one later. I have arranged with the owner of the engine for you to use it until you get one, . . . I was obliged to pull the rods on the new well, as they came unscrewed from the valve, but I have it working nicely again. The strapper came yesterday and strapped some of the tanks, but would not strap the large tank until some new straps were put on it, and also requested a new bottom strap on the one he did number. I will order these at once from the supply house, and you can pay for them later, as I will have them charged to me."

In this letter he also suggested that "you start drilling a new well at once, instead of cleaning out the old ones, for it will soon be winter." Without quoting other parts of the letters, it is sufficient to say that they show quite an active supervision or assistant supervision by Stonesipher of the work being done on the leases in arranging to get coal, needed connections, putting cover on the oil tank building, a belt house, etc. On October 4 he wrote advising where they could get a driller, a Mr. Curtis who had just completed a well near. In this letter he expressed the wish that DeYarmett would get $1,500 to him at the earliest possible moment. There was also evidence that he had suggested employing these plaintiffs to do the drilling; that when the drillers went on the premises he was about where they were drilling, at least some of the time, and that he never made any claim that he was the owner of the lease and that the same was not owned by the Verdigris River Producing Company until after the well was completed about the last of November, and at that time stated that DeYarmett and associates were behind with their payments to him but that he would make no objection about that as long as they were developing the property. On this point there is some controversy. Stonesipher testified that he told the drillers about that when they first moved on the premises and later when they were down about 800 feet. There is also a controversy as to directions given by Stonesipher about the manner of doing the work, the plaintiffs contending that Stonesipher had given such directions, and this was denied by him. Stonesipher also denies making the statement in effect that he would not insist upon the payments to be made by DeYarmett and associates while they were developing the property. On these controverted facts so far as they were necessary to support the judgment, the court found in favor of plaintiffs and against the defendants.

It is clear, of course, from the evidence that Stonesipher was not insisting upon forfeiting his contract because of nonpayments or noncompliance with the terms of the lease and did not take any steps to do that until in May following the completion of the work. It is also clear that he at least knew of the work being done and urged and in part assisted and directed the doing of the work. The trial court rendered a memorandum decision in part as follows:

"Now, in this case, the defendant Stonesipher for his own benefit and by written contract, required that the work done by claimants, that is, the drilling of the wells, should be done. It also appears that he stated that he did not care about the default in payments so long as the purchasers continued to develop the land. Nothing is said in the contract as to who is to pay for this development, although, as between the purchaser and the seller, I presume it was intended that the purchaser should pay. It therefore appears that the purpose of the defendant Stonesipher in this transaction was not only to sell certain things that existed, but to procure the doing of future work to enhance the value of his property. In this particular, the case is very similar to *Shearer v. Wilder,* 56 Kan. 252 and *White v. Kincaid,* 95 Kan. 466. In this latter case the supreme court says: 'A vender of land who induces one who has contracted to purchase it to expend labor and material in improving the land cannot defeat the claim for a lien of those who contribute their labor and material to enhance the value of this property.' Defendant Stonesipher did not merely turn possession of the property over to the purchasers, allowing or acquiescing in their improving it in such manner as they saw fit for their purpose and their benefit, but he not merely urged them, as in the *White v. Kincaid* case, to make improvements, but dictated absolutely that they should do so. In such case, where the seller not only puts the buyer in possession, but for his own benefit and profit requires him to have work done by others, which enhances the value of his property, to my mind he thereby constitutes such person as his agent to contract for the improvements. I do not mean to the extent of pledging his person credit, for that, like the borrowing of money by an agent, is never presumed except upon strong proof. But being affected with full knowledge as to the lien laws as to oil properties, and not only transferring to the buyer the power to cause the improvements, which are the basis of such a lien, to be made, but requiring him to have them made, would merely be the securing of another to do the work and carry out the purposes of himself. And this, under the cases cited and under the case of *Meadows v. Oil Co.* [108 Kan. 228] would be the constituting of such a one as his agent to have work done."

Appellant contends that DeYarmett and his associates never had a lease on his premises, but only had an agreement for a lease, and were not entitled to a lease until they made the payments provided for in the agreement and since these payments were never made they had no lease; that he made no agreement with the plaintiffs for drilling, nor did anyone as his agent or trustee make such an agree-

ment, and that the only lien plaintiffs can have, if any, is upon the interest of DeYarmatt and his associates.

The lien is claimed by plaintiff under Revised Statutes 55-207 to 55-210. This does not authorize a lien upon the real property (*Bassett, Trustee, v. Carpenter,* 114 Kan. 828, 220 Pac. 1028) but is analogous to the regular mechanic's lien statute (R. S. 60-1401 to 60-1414) and dicisions concerning such liens are controlling (*Meadows v. Oil Co.,* 108 Kan. 228, 231, 194 Pac. 916) in so far as they are applicable.

Appellant by the terms of his agreement could have declared it void on September 26 for the nonpayment of $5,000 due that day, for by his agreement the time of payments as well as the time and performance of conditions under the lease were made of the essence of the contract. But he chose not to do that. Instead, he urged the drilling of a well at once, suggested drillers who might be employed, and busied himself with many details of looking after the work being done on the premises, even advancing more than $400 of his own money to pay for gas, oil, and supplies of various kinds in order that the work might move along rapidly. All these things indicate that he was anxious to have his property further developed for oil, no doubt with a view that it would be to his ultimate benefit. In this respect it is much like the cases pertaining to mechanic's liens on real property cited by the trial court, *Shrearer v. Wilder,* 56 Kan. 252, 43 Pac. 224; *White v. Kincaid,* 95 Kan. 466, 148 Pac. 607. Appellant cites and relies upon *Huff v. Jolly,* 41 Kan. 537, 21 Pac. 646; *Lumber Co. v. Schweiter,* 45 Kan. 207, 25 Pac. 592; and *Getto v. Friend,* 46 Kan. 24, 25 Pac. 473. Without taking time to analyze them it may be noted that the facts in those cases were quite different than they are here.

If the real, underlying purpose of appellant was to have his premises developed for oil and gas, he being the owner of oil wells and oil production equiment then on the premises, the fact that he retained title in himself would not under the circumstances here disclosed defeat the right to a lien by the plaintiffs upon such oil production property. (*Skinner v. Oil Co.,* 112 Kan. 742, 212 Pac. 684.)

The judgment of the court below is affirmed.