No. 31,357

C. A. Noll, doing business as Beacon Brick Company, *Appellee*, v. John I. Graham et al., *Appellees*, The Noble Mortgage Company, formerly The Fisher-Moore Investment Company, *Appellant*.

(27 P. 2d 277.)

Opinion filed December 9, 1933.

*W. R. Glass, Innis D. Harris, Jr., W. J. Glass, H. W. Hart, Glenn Porter* and *Enos E. Hook,* all of Wichita, for the appellant.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester Morris, O. W. Helsel, T. V. McCluggage, Roy S. Elder, B. F. Alford, Loyd Cooper, Earl Blake, Harold Blake, Charles B. Hudson, George Austin Brown, Z. Wetmore* and *George M. Ashford,* all of Wichita, for the appellees.

The opinion of the court was delivered by

Thiele, J.: This was an action to foreclose mechanics' liens and mortgages and to determine priorities. The trial court held the

mechanic's lien to be prior to the mortgages, and the mortgagee appeals.

Evidence was offered which tended to show the following: The real estate here involved is lots 7 and 8, block 10, Lincoln Heights addition to Wichita. Prior to July 9, 1931, one W. L. Morris was the record owner of the lots. On April 2, 1930, the Fisher-Moore Investment Company, the predecessor of the Noble Mortgage Company, acquired title to property at 719 South Lawrence avenue in Wichita subject to encumbrance. John I. Graham, a contractor and builder in Wichita, was the actual owner of this property, but the investment company held the title to secure it on a note of $2,250. About July 1, 1931, Graham was approached by the investment company on a proposition that the lots first mentioned be acquired and houses built thereon. The consideration for the lots was to be paid by the investment company paying Morris $400 and conveying the South Lawrence avenue property free and clear except a mortgage to Wheeler, Kelly, Hagny Investment Company. The title to the lots was to be taken in Graham's name, and two mortgages of $4,800 each were to be placed on the lots, the mortgages to be first liens. Out of the total amount of $9,600 the investment company was to pay itself the $2,250 note above mentioned and the following October was to pay Morris the sum of $400. The South Lawrence avenue property was conveyed to Harriet Morris, a sister of W. L. Morris, by a deed dated April 9, 1931, and recorded July 14, 1931. The grantee is a sister-in-law of Max A. Noble, president of the defendant mortgage company. When the exchange was first mentioned it was agreed that two houses should be erected on the lots to be acquired, at a cost of $7,500 each, the general plan of the houses being suggested by Graham, but the cost to be determined by the investment company. The investment company was to finance the deal. Graham never put in any money of his own, and all sums expended were furnished by the investment company. After the arrangement was agreed on, time was taken to bring abstracts of title to date, etc., and on July 9, 1931, the lots were transferred to Graham, who at the time executed the mortgages, and at the same time Graham conveyed the lots by warranty deed to the Fisher-Moore Investment Company, subject to the mortgages, as security that he would go ahead and build the houses. On July 7, 1931, without any express consent of Morris or the investment company, Graham started excavation of the first cellar and the con-

struction thereafter proceeded, the bills, in so far as they were taken care of, being paid by the investment company.

The properties were never fully completed; many mechanics' lien statements were filed, and the suit was instituted by one lienholder, who made Graham, the other mechanics' lien claimants and the Noble Mortgage Company, formerly the Fisher-Moore Investment Company, defendants. Issues were joined and the cause was tried. In the court below the principal controversy of fact was as to whether the work was commenced before the mortgages were recorded, and the controversies of law were as to the sufficiency of a part of the lien statements and as to the priority of liens. The trial court refused the appellants' requested findings of fact and conclusions, and made the following

### "FINDINGS OF FACT

"1. Prior to July 9, 1931, W. L. Morris was the record owner of the property in question. Following negotiations he sold this property to John I. Graham and on July 9, 1931, executed a deed to the property.

"2. John I. Graham was at and prior to this time a contractor and builder in the city of Wichita. Previous to the execution of the deed he had made plans and arrangements to build two houses upon the property in question and about July 3 had the basement for the north house staked out. At or near that time he contracted with Overstreet & Wilson for excavation of the basements for the two houses. They began work on the excavation for the first, or north house, on the 7th day of July, 1931, and completed that excavation, also the excavation for the south house. The work for both was done under one contract.

"3. Contracts for other work were let by John I. Graham and the work done, material and labor being furnished as set up by the various claimants in this action. In each case there was one contract for the two houses.

"4. At the time of the purchase of lots by Graham there was an exchange of property and adjustment of loans as between Graham and the investment company. The deed was executed to Graham on July 9, 1931, and following that John I. Graham and his wife, Charlotte Graham, made applications for two loans in the sum of $4,800 each, one on the south half of lots 7 and 8 and one on the north half of lots 7 and 8. They executed notes and mortgages for the same on July 9, which were recorded with the register of deeds on July 10, 1931. No part of the principal or interest has been paid. The investment company, in the arrangement, paid $400 in cash to Morris for Graham upon the lots in question. The company credited itself with $2,250 payment of a mortgage held on the property known as the South Lawrence avenue property, which entered into the deal by which Graham purchased the lots in question from Morris. Following that, the investment company advanced money from time to time as work progressed upon the two houses built by Graham upon the lots in question. The investment company also held, as collateral, a deed

to the property from Graham and wife, which was never recorded, but returned to Graham.

"5. Statements for liens as amended and as filed are made a part of these findings.

"6. A lien is claimed by W. A. Cunningham for linoleum and shades furnished in the two houses. The shades were made to order in special sizes for the various windows, were set back in a recess of the window and were held in place by brackets nailed to the building. The linoleum was an inlaid linoleum cut to fit the rooms and cemented to the floor.

### "Conclusions of Law

"1. Construction of the two houses was one enterprise, and the liens claimed should be allowed as first and prior liens upon the entire property and judgment entered foreclosing the same.

"2. The Fisher-Moore Investment Company, now The Noble Mortgage Company, is entitled to judgment foreclosing its mortgages and judgment against John I. Graham and Charlotte Graham, his wife, on the notes for the principal and interest now due; to have a lien upon the premises, inferior only to the liens for material and labor herein allowed.

"3. The property to be sold as provided by law, the proceeds to be applied, first, to the payment of the costs of the action; second, to the payment of taxes lawfully levied against the property in question; third, to the payment of the amounts of the various liens for the material and labor, or if there be insufficient to pay the entire amount, then pro rata upon said amounts; fourth, the balance paid to the owners of the mortgage and notes, or if an excess remain after the payment of same, then that said amount to be paid into court to abide the further order of the court.".

Judgment was rendered accordingly. The appellant moved the court to set aside certain of the findings of fact and conclusions of law and for a new trial, all of which motions were overruled, and this appeal followed.

Appellant presents and argues five principal questions, which will be noticed.

The first is that the trial court's finding that work started on the improvement prior to the recording of the mortgages is based on recollection of appellees' witnesses, unsupported by documentary evidence, while the testimony of appellant's witnesses is supported by documentary evidence. It is true that appellant's witnesses in fixing dates made reference to certain documents which enabled them to fix dates, but, with the exception of an assistant building inspector's notice, the documents had no further bearing. As to the building inspector, he testified as to service of a notice with respect to the contractors doing no more work until a permit was obtained from the city. The abstracts contain photostatic copies of this no-

tice, showing the dates to have been written over. In addition thereto, cross-examination tended to discredit his testimony. Taken at its best, it showed that the work was under way whenever the notice was served. The appellees supported a part of their testimony in somewhat the same way, although to a lesser degree. Various men employed on the work fixed dates by reference to extraneous matters, some of which were in writing. There was conflict in the evidence which the court resolved against the appellant, there was evidence which supports the finding the work started on July 7, 1931, and before the mortgages were recorded. That finding is conclusive here, and the cases so holding are too numerous to mention. (See West's Kan. Dig. App. & Error, 1010 and 1011. Hatcher's Digest, App. & Error, 507 and 508.)

The second question discussed is that the lien statements of the plaintiff and of the defendants Cook Paint & Varnish Company and Advance Furnace Company are void because they have not been itemized. No assignment of error is directed against the allowance of the furnace company's lien, and it need not be reviewed. (See *Baden v. Bertenshaw*, 68 Kan. 32, 74 Pac. 639; also, rule 5 of this court.) As the claimed error presents substantially the same question as to the others named, it will, however, be considered. The plaintiff's lien statement did not show his whole account but merely a balance due for brick, in the amount of $360. At the trial he was permitted to amend his lien to show that he furnished 18,000 brick at $20 per thousand, $360. The paint company's lien statement showed "To Mdse. S. Terrace Drive Job" and then set out dates and amounts without specifying, whether paint, varnish, putty or whatnot was furnished. At the trial it was likewise permitted to amend to show the specific items. The furnace company's statement showed a total amount for installation of warm-air registers and wall stacks. Permission was given to itemize the statement by showing hours of labor and unit prices of materials.

Appellant contends that the lien statements could not be amended after four months from the time of furnishing the last materials; that the lien statements prior to the attempted amendments were fatally defective, citing *Nixon v. Cydon Lodge*, 56 Kan. 298, 43 Pac. 236, in support. That case does not support the contention. There a large amount was claimed, and the balance due was stated merely as a conclusion. In the statements here there was some detailing of items. In the plaintiff's statement it is true the word "balance"

was used, but the proof showed that the claim was for all brick furnished; in the other claims no one could be or was misled. As was said in *Nixon v. Cydon Lodge,* supra:

"The same objection is made against the statement filed by August Nelson & Co. Their work was done under a contract, and was substantially completed before work on the building was suspended. The materials which they furnished and the work which they did came within the contract price, and there was no necessity for them to separate and state the different elements which entered into their claim." (p. 303.)

We think the statements as originally filed were so sufficiently itemized that they were not fatally defective; that they were properly amended, and that the trial court committed no error with respect to the allowance of the liens.

The third question discussed is that Graham did not acquire any interest in the property so that mechanics' liens could attach prior to July 9, 1931. In support of its contention that Graham's interest in the real estate prior to his receiving the deed and giving the mortgage to appellant was not sufficient to support the liens, appellant relies on *Huff v. Jolly,* 41 Kan. 537, 21 Pac. 646; *Getto v. Friend,* 46 Kan. 24, 26 Pac. 473; and *White v. Kincade,* 95 Kan. 466, 148 Pac. 607. In *Huff v. Jolly,* supra, Jolly entered into an arrangement with the agent of the owner of the lot to purchase it, the contract to be sent the owner for approval. The contract was without force until approved. Jolly started work and the agent called his attention to the fact no contract was made. The particular contract was never completed and the owner sold to another person, defendant in the action. It was said in the opinion:

"The possession was not taken by them (proposed purchasers) with the consent of the company, nor does it appear that it had knowledge of the possession, or that the improvement was being made. We are not disposed to place a narrow or illiberal interpretation upon the ownership necessary to the creation of a mechanic's lien (*Lumber Co. v. Osborne,* 40 Kan. 168), but such a lien can only be created by the voluntary act or sanction of one who is either a legal or equitable owner." (p. 539.)

In *Getto v. Friend,* supra, Getto sold a lot to Peavy, who paid $50 cash and agreed to give his note for the balance, secured by a mortgage. It was agreed that Peavy should build a house and give a first mortgage and that Getto's mortgage should be subject thereto. In so far as attachment of the liens is concerned, the court held that possession of the lot in pursuance of the purchase contract was sufficient to sustain the priority of the mechanics' liens. The ques-

tion of the purchase-money mortgage will be later discussed. *White v. Kincade*, 95 Kan. 466, 148 Pac. 607, is also later discussed.

In *Lumber Co. v. Fretz*, 51 Kan. 134, 32 Pac. 908, Fretz commenced work on April 26, but did not obtain title until June 2. On June 1 Fretz had executed mortgages. In the opinion a review of earlier decisions is made. It was held that a party in open undisputed possession of real estate, who afterwards received a conveyance of the legal title thereto from the owner, has such title as will enable him to create a mechanic's lien thereon as against mortgagees and grantees of himself. The question of the priority of the mortgages as purchase-money mortgages was not involved.

In *Lumber Co. v. Arnold*, 88 Kan. 465, 129 Pac. 178, the sufficiency of title to sustain a mechanic's lien was again considered, a review of earlier decisions was made, and it was held that where a purchaser of vacant lots under an oral contract by which he agreed to pay part of the purchase price in cash, the balance when the deed was delivered, with the understanding that he was to erect houses on the lots, and took possession of the lots before making the payment and started work, he had such title as would sustain a mechanic's lien, and *Bond v. Westine*, 128 Kan. 370, 278 Pac. 12, and *Golden Belt Lbr. Co. v. McLean*, 138 Kan. 351, 26 P. 2d 274, are to the same effect. (See, also, 40 C. J. 62; 18 R. C. L. 884 *et seq.*)

It appears here that prior to receiving his deed from Morris, but at a time after the negotiations started, and a considerable time after the date of the deed to the South Lawrence avenue property to Harriet Morris, Graham went into possession and started work on or before July 7, 1931. We are not here concerned that evidence from which a contrary conclusion might be drawn was also offered. The court's conclusion of law holding in effect that Graham had sufficient title to support the liens from the time he started work was correct.

The fourth question raised by appellant is that the transaction wherein Graham acquired the title to the lots and gave the mortgages was one transaction, and the mechanics' liens, if they ever attached, attached subject to the mortgages. What has been said above is a sufficient answer.

The fifth question is that appellant's mortgages are purchase-money mortgages and are superior to the mechanics' liens for that reason.

The general rule is that a mortgage given for the unpaid part of the purchase price, simultaneously with a deed for the property and as a part of the same transaction, takes precedence of prior judgments and all other existing and subsequent claims and liens of every kind against the mortgagor. (*Foster v. Bank,* 71 Kan. 158, 80 Pac. 49, 114 A. S. R. 470, 6 Ann. Cas. 44; *Mortgage Co. v. Winters,* 94 Kan. 615, 146 Pac. 1012, Ann. Cas. 1916C 956; *Kuehn v. National Bank,* 117 Kan. 717, 232 Pac. 1060; 41 C. J. 528; 19 R. C. L. 416.) Although it has been held in some cases that purchase-money mortgages are subordinate to liens for work authorized by the vendor or done with his knowledge or consent. (See *White v. Kincade,* 95 Kan. 466, 148 Pac. 607, Ann. Cas. 1916B 667.) For a note on priority as between mechanics' liens and purchase-money mortgage, see 72 A. L. R. 1516.

In support of the judgment appellees rely on *Shearer v. Wilder,* 56 Kan. 252, 43 Pac. 224, and *White v. Kincade,* supra. In the Shearer case the owner, desiring houses to be built, agreed with a prospective purchaser as to such building, the agreement being that after they were built they would be conveyed free and clear, and a mortgage taken back for the price of the lots and the cost of the improvements. The proposed purchaser built the houses, but did not pay for the materials and labor, and the lots were never conveyed. It was there held that under the contract the purchaser was authorized to contract for the labor and materials and that the laborers and materialmen were entitled to a lien against the property and all the legal and equitable interest of the owner therein. As was said in the opinion:

"The lienors furnished the material and labor which were used in carrying out Wilder's purpose. He never parted with the legal or equitable title to the land upon which the houses were erected, and now, after they had been erected in accordance with the plans and specifications, and after McCann has surrendered all his rights under the contract to Wilder, it would be a great injustice to allow Wilder to hold the property enhanced in value by the labor and materials of the lienors without paying for such labor and material." (p. 262.)

While in this case appellees claimed that Graham had conveyed the lots to the investment company, the court found the deed was given as collateral security, was never recorded and was returned to Graham.

In the White case Wiley held a blank unrecorded deed dated December 17, 1910. Kincade, who had been in possession from

March, 1911, hesitated about drilling a well which, it was estimated, would cost $4,000, as he had only $1,000 to put in the improvement. Wiley advised him to go ahead and said he would see Kincade through with it or provide for finishing it. The work was started on September 8 and completed October 19, 1911. On October 21, 1911, Kincade's name was inserted in the blank deed, and he gave notes totaling $10,776.20, secured by a mortgage on the land, which it was claimed were entitled to priority as a purchase-money lien. In disposing of the contention the court said:

"While the testimony is to the effect that Wiley purchased the land from Dierks and had an equitable title to it when the purchase was made by Kincade, and while there is room for an inference from the testimony that the secured notes were given as part of the price of the land, Wiley, according to the evidence, effectually estopped himself to claim priority over the mechanic's lien. He not only eliminated himself so far as the record title is concerned, but after contracting to sell the land and before the conveyance was made he not only consented, but procured Kincade to make an expensive improvement on the land. . . . A vendor of land who induces one who has contracted to purchase it to expend labor and material in improving the land cannot defeat the claims for a lien of those who contribute their labor and material to enhance the value of this property. In such a case, in the absence of a controlling agreement, he cannot insist that the mechanic's lien shall be subordinate to his mortgage subsequently given for the unpaid purchase price of the land when the sale is completed and the title transferred. (*Drug Co. v. Brown*, 46 Kan. 543, 26 Pac. 1019; *Shearer v. Wilder*, 56 Kan. 252, 43 Pac. 224; *Lumber Co. v. Band Co.*, 89 Kan. 788, 132 Pac. 992; *Hill v. Gill*, 40 Minn. 441, 42 N. W. 294; *Pickens v. Plattsmouth Inv. Co.*, 37 Neb. 272, 55 N. W. 947.)" (pp. 468, 469.)

The answers and cross petitions of defendant mechanics' lienholders alleged joint enterprise between Graham and the investment company and that the investment company induced, caused and authorized Graham to commence building said houses; that Graham had no money; that the investment company did nothing to prevent Graham from going ahead with the construction, and that it was now estopped from claiming priority of lien. The court made findings of fact, but did not find that there was any such agreement or authorization to commence the building, nor did it make any finding that the investment company was estopped.

In *Snodgrass v. Carlson*, 117 Kan. 353, 232 Pac. 241, it was said:

"We regard it as well established that when a court sits as a trier of facts and is asked to make findings of fact and does so, in accordance with R. S. 60-2921, he is presumed to make findings of facts upon all questions necessary to sustain the judgment rendered. In such a case the facts found will be pre-

sumed by this court to embrace all of the facts of the controversy established by proof. (*Shuler v. Lashhorn,* 67 Kan. 694, 74 Pac. 264.) No finding having been made on the question of waiver, and no request for one having been made by appellee, the question was no longer in the case."

And see, also, *State, ex rel., v. Riverside Drainage Dist.,* 123 Kan. 46, syl. ¶ 5, 254 Pac. 366.

While there was evidence which might have warranted a finding favorable to the contention of the mechanics' lienholders, there was also evidence to the contrary, and it must be held that the court, having failed to find the facts to be as alleged by the mechanics' lien claimants and that the investment company was estopped, found to the contrary. It is held that the investment company mortgages, so far as they are purchase-money mortgages, are superior to the mechanics' liens.

Directing attention to the question of purchase money, the evidence is undisputed that the lots were purchased for a total consideration made up of $400 cash paid by the investment company to Morris, and representing an agreed equity in the South Lawrence avenue property and the satisfaction of a note for $2,250 owed by Graham to the investment company and secured by a deed to that property held by the investment company. It appears from the record that when the deal was closed and the lots in question were deeded to Graham, the amount due on the $2,250 note was $2,490.62, and this sum plus the $400 cash paid, or $2,890.62, represented the purchase price included in the two mortgages.

In *Bond v. Westine,* 128 Kan. 370, 278 Pac. 12, it was said:

"It has been held that a mortgage may be divided; that so far as it is a purchase-money mortgage it constitutes a lien on the property prior to other liens, while the part which does not represent purchase money does not. (*Pratt v. Topeka Bank,* 12 Kan. 570; *Greeno v. Barnard,* 18 Kan. 518.)" (p. 373.)

And see note 72 A. L. R. 1531, where priority of mortgage for purchase money and additional sum is discussed.

The appellant argues that because a part of its mortgage represented purchase price, it is entitled to priority on the whole amount advanced, and relies on *Martsolf v. Barnwell,* 15 Kan. 612, in which case there was no question but that the mortgage was recorded before the work started, and on *Seitz v. U. P. Railway Co.,* 16 Kan. 133, which is not in point here, and on *Kantzer v. Southwest Home Investment Co.,* 128 Kan. 401, 278 Pac. 58. Owing to the way in which that case reached this court, it cannot be said to be controlling

here. The plaintiff brought an action to foreclose a mechanic's lien, a mortgagee asserted priority of mortgage, the court split the mortgage, which was not a purchase-money mortgage, allowed part as a first lien, the mechanics' liens as a second lien, and the balance of the mortgage as a third lien. The mortgagee appealed and the plaintiff filed no cross appeal. In disposing of the matter the court said:

"In the view that the building was commenced before the mortgage was executed and recorded, there is nothing wrong with this decree of which the mortgagee can complain. Perhaps the first and second liens should have been made coördinate, but there is no cross appeal on that point, and as a practical question it is said to be immaterial." (p. 402.)

The judgment of the lower court allowing the mechanics' liens priority was erroneous. The appellant should have been allowed a first lien in so far as the purchase price included in its mortgages is concerned, the mechanics' liens should have. been allowed as coördinate second liens, and the balance of appellants' mortgages should have been allowed as a third lien.

The judgment of the lower court is reversed and the cause remanded for further proceedings consistent herewith.

HUTCHISON, J., not sitting.