No. 25,724.

E. E. KUEHN, *Appellant,* v. (WILLIAM C. FREEMAN et al.) THE AMERICAN NATIONAL BANK OF PRYOR, OKLA., *Appellee.*

SYLLABUS BY THE COURT.

WRITTEN CONTRACT—*Conveyance of Land—Contract, Deed and Purchase-money Mortgage Placed in Escrow—Second Mortgage Given and Recorded—Purchase-money Mortgage Subsequently Recorded—Priority of Mortgages.* A written contract provided among other things for the conveyance of a tract of land and the execution of a purchase-money mortgage by the grantee to the grantor, these instruments with a copy of the contract to be left with a bank for delivery when the titles were completed. The contract also provided that the bank should hold the deed and mortgage until each party should pay one-half of a stated commission to the real-estate agents who had negotiated the deal. After the title had been completed, but before any commission had been paid, and while the bank still held both the deed and mortgage, a stranger to the transaction, claiming to have had no notice of the purchase-money mortgage, obtained another mortgage on the land from the same mortgagor, which was recorded two days later. The purchase-money mortgagee then paid his commission and obtained possession of his mortgage, and it was recorded two days after the other. Some weeks later the balance of the commission was paid by the other mortgagee, who obtained possession of the deed from the bank and caused it to be recorded. It is held that the purchase-money mortgage had priority over the other, regardless of whether the latter was acquired for value and without notice of the former.

Appeal from Kingman district court; GEORGE L. HAY, judge. Opinion filed February 7, 1925. Reversed.

*S. S. Alexander,* of Kingman, for the appellant.
*Clark A. Wallace,* of Kingman, for the appellee.

The opinion of the court was delivered by

MASON, J.: This appeal is from a judgment holding a purchase-money real-estate mortgage to be inferior to a mortgage bearing a later date, on the ground that during a considerable interval that was permitted to elapse between the delivery and the recording of the purchase-money mortgage one who had no notice thereof acquired the other mortgage for value.

The plaintiff, E. E. Kuehn, on April 12, 1922, entered into a written contract with William E. Freeman to deed to him a tract of Kansas lands taking back in part payment the purchase-money mortgage referred to. The deed and mortgage were signed and acknowledged and with a copy of the contract and other papers involved in the deal were placed in a bank at Chelsea, Okla., to be delivered when the terms of the agreement were met. While the deed and mortgage were still in the physical possession of the Chelsea bank the American National Bank of Pryor, Okla., on August 3, 1922, obtained from Freeman the other mortgage referred to, which was recorded August 5, 1922. Kuehn brought this action to foreclose his purchase-money mortgage (which was recorded August 7, 1922), asking that it be given priority over that of the Pryor bank. He appeals from the judgment denying this relief.

The plaintiff's contention is that the mortgage to him and his deed to the mortgagor were held by the Chelsea bank as escrows and had not been delivered at the time the other mortgage was given, in which case his claim of priority would doubtless be well founded, for a lien for purchase-money originating in the transaction by which title is transferred is conceived as an interest which has at all times been vested in the vendor and has been reserved to him rather than conveyed to him by the purchaser. (19 R. C. L. 416.) The Pryor bank, however, (which will be spoken of as the defendant, although other parties were brought in), asserts that before the execution of the mortgage to it the deal between the plaintiff and Freeman had been completed and Freeman had become entitled to the deed and the plaintiff to the purchase-money mortgage, but the Chelsea bank held these papers by consent of the parties, not to await the fulfilment of any condition of the escrow agreement, but merely as security for the payment by them of their respective commissions to two real-estate agents for their services in arranging the deal. The trial court adopted the latter theory.

It has been said:

Kuehn v. National Bank.

"A purchase-money mortgage executed at the same time with the deed of purchase takes precedence over any other mortgage by the same mortgagor, and the second mortgagee cannot, by having his mortgage recorded first, acquire a priority over the purchase-money mortgage." (23 A. & E. Encyc. 467.)

The statement is probably too broad and requires qualification, such as is indicated by this text:

"While a purchase-money mortgage, like any other, must be put on the record, and proper diligence is required of the mortgagee in doing this, yet the priority of such a mortgage is not lost by the mere fact that the owner of it allows a junior mortgage to be first recorded, if there are no other circumstances to show his agreement or acquiescence in the postponing of his security." (27 Cyc. 1181.)

This court has said:

"The fact that a mortgage is given for purchase-money does not place it outside the provisions of the registry act or give it priority to which it would not be entitled under said act." (*Jackson v. Reid* 30 Kan. 10, 14, 1 Pac. 308.)

The latter clause of that quotation may likewise need some qualification to make it universally applicable. A suggestion to that effect may be found in this language:

"Ordinarily, a grantor of land, who simultaneously with the execution of the conveyance, takes a mortgage from the grantee for the balance of the purchase-money is not required to search the records for incumbrances by such grantee while he was a stranger to the title, and before the deed of the grantor was executed." (*Ely v. Pingry,* 56 Kan. 17, syl. ¶ 2, 42 Pac. 330.)

The weight of authority seems to support the view that a purchase-money mortgage because of its character as such has priority over another, which is not defeated by the mere circumstance of the other reaching the register first, where the purchase-money mortgage is recorded without any unnecessary delay after its delivery. But if the holder of a purchase-money mortgage voluntarily withholds it from record and in the meantime money is lent to one having no notice of it, upon another mortgage, no reason is apparent why the mortgage first recorded should not have priority in accordance with the ordinary rules with regard to recording instruments affecting real estate.

If before Freeman executed the mortgage to the defendant the plaintiff was entitled to receive his purchase-money mortgage from the Chelsea bank, but chose to allow it to remain there as security for the payment of some claim not connected with the contract under which the papers were originally deposited, doubtless he would thereby have lost his superior rights. But notwithstanding the find-

ings of the trial court in favor of the defendant, the established facts do not show this situation. The written contract concerning the deal between Freeman and the plaintiff provided that the deeds (the context showing that the mortgage was included) should be delivered to the rightful parties "when titles have been completed," and this condition was met a considerable time before the execution of the mortgage to the defendant. But the contract also contained this paragraph:

"Both parties shall pay M. Bird Parks and Henry Cleidt their commission of 2½ per cent on each side when papers are transferred or make settlement for same in some satisfactory manner to them."

We interpret this language (and it appears to have been so interpreted by the parties) as meaning that the bank was to hold the papers until the respective commissions were paid. There is no evidence of any agreement outside of the written contract having been made that the bank was to hold the papers as security for the payment of the commissions. Therefore at the time the mortgage to the defendant was executed the Chelsea bank was rightfully holding the plaintiff's deed to Freeman and Freeman's mortgage to the plaintiff according to the terms of the written agreement until these commissions should be paid. The title not having passed from the plaintiff to Freeman, and arrangements having been made so that at the time it should pass an interest represented by the mortgage would be retained by the plaintiff, the defendant could not acquire a superior lien by taking a mortgage from Freeman. It might be plausibly argued that if all that prevented the plaintiff from getting the mortgage was his own delay in paying the share of the commissions charged against him, the delivery as against him should be regarded as complete. But it is shown, also, that the deed was still held by the bank because of the failure of Freeman to pay his share of the commission, and this was paid by the Pryor bank to protect its own interests in October, 1922, the deed being delivered to it at that time and recorded later.

The findings of the trial court recite that Freeman had withheld the deed to him from the record for about two months after its delivery to him, which deed in the meantime had been put up by the said Freeman as a pledge to pay a commission." But the commission referred to was that mentioned in the contract. There had been no actual delivery of the deed to Freeman, and his payment of the

purchase price above the mortgage did not result in a constructive delivery, because the deed still remained in the hands of the bank under the terms of the original contract to be held until the commission was paid.

The written contract provided that possession of the land was to be given August 1, 1922. The trial court found that on August 3 Freeman was the owner of the land and in its actual possession. The actual possession referred to appears to have been a possession supposed to result from the title having passed to him, for the evidence does not show a physical possession, although the plaintiff had entered into the occupancy of Oklahoma land that he acquired in the trade.

The defendant's evidence was that it had obtained its mortgage from Freeman after he had shown its representative the deed from the plaintiff to him, having obtained it temporarily from the Chelsea bank in order that the proper description might be inserted in the mortgage. There is some plausibility to a contention made by the plaintiff that in this situation the defendant was chargeable with notice of the actual facts concerning the capacity in which and the purposes for which the Chelsea bank held the deed, and therefore had notice of the purchase-money mortgage. As we hold the defendant's mortgage to be inferior to that of the plaintiff, on the grounds already stated, this point need not be determined.

The plaintiff contends that the defendant acquired its mortgage with actual knowledge of the purchase-money mortgage and without parting with anything of value. On the day the defendant's mortgage was executed its representative was told of the purchase-money mortgage, but according to his testimony this was later in the day than the execution of the mortgage to the defendant. The consideration for the mortgage to the defendant, according to its version, was the release of other security. It does not clearly appear that this other security had passed beyond the control of the defendant before it learned of the purchase-money mortgage, and upon this account its claim to the rights of an innocent purchaser may not be valid. This question likewise need not be passed upon.

The judgment is reversed, with directions to give the plaintiff's mortgage priority over that of the defendant.