No. 64,729

DALE B. SHADE, d/b/a SHADE CONSTRUCTION COMPANY, and WIL-
LIAM H. YOUNGER, d/b/a/ YOUNGER ELECTRIC, *Appellants*, v.
WHEATCRAFT INDUSTRIES, INC., *Defendant*, and DIVERSIFIED
FINANCIAL PLANNERS, INC., and CITY OF GORHAM, KANSAS,
*Appellees/Cross-appellants/Cross-appellees*.

(809 P.2d 538)

Opinion filed April 12, 1991.

*Glenn R. Braun*, of Glassman, Bird & Braun, of Hays, argued the cause and was on the brief for appellants.

*Dennis R. Davidson*, of Thompson, Arthur & Davidson, of Russell, argued the cause and was on the briefs for appellee/cross-appellant Diversified Financial Planners, Inc.

*Kenneth L. Cole*, of Woelk and Cole, of Russell, argued the cause and was on the briefs for appellee/cross-appellant City of Gorham, Kansas.

The opinion of the court was delivered by

SIX, J.: The issue for resolution in this real property case deals with the contested priority of purchase money mortgages and

mechanics' liens. The priority issue is raised by an action to foreclose mechanics' liens and mortgages.

The Court of Appeals affirmed the trial court in an unpublished opinion. We granted the mechanics' lienholders' petition for review.

We resolve the priority contest in favor of the mechanics' lienholders, overrule *Noll v. Graham,* 138 Kan. 676, 27 P.2d 277 (1933), and reverse the Court of Appeals and the trial court.

Plaintiffs/mechanics' lienholders, Dale B. Shade, d/b/a Shade Construction Company (Shade), the general contractor, and William H. Younger, d/b/a Younger Electric (Younger), the electrical contractor, appeal from the judgment granting the purchase money mortgages priority over the mechanics' liens, which had attached before the mortgages were recorded. The other mechanics' lienholders, M&V Floor Covering, Inc., (M&V) and Jim Rohr, d/b/a Russell Drapery & Carpet (Rohr), have not appealed.

The defendant City of Gorham (City) cross-appeals from the judgment granting defendant Diversified Financial Planners Inc.'s (Diversified) purchase money mortgage priority over the City's purchase money mortgage.

Diversified cross-appeals from the judgment denying it equitable assignment or subrogation of the purchase money mortgage rights of the City.

Diversified was substituted for the FDIC because Diversified had acquired the Home State Bank mortgage from the FDIC. (The FDIC had accepted appointment as receiver for the Bank.)

The trial court, prior to trial, granted judgments to Shade, Younger, M&V, and Rohr (the mechanics' lienholders) and to Diversified and the City (the two mortgagees). The priority issue involving purchase money real estate mortgages and mechanics' liens was reserved for determination at trial.

### Facts

The parties stipulated to the facts and agreed to submit the case to the trial court on the briefs without presentation of evidence or oral argument.

### Stipulation

The stipulation of facts provided:

"1. This is a foreclosure action against the following described real estate, to-wit [legal description of 32-acre tract].

"2. This is also an action to foreclose security interests against the following described personal property of Wheatcraft Industries, Inc., to-wit [various personal property].

"3. Wheatcraft Industries, Inc., is a closely held corporation owned entirely by Joyce Banbury of Russell, Kansas.

"4. Sometime in 1987, Joyce Banbury set out to find financing for the purpose of acquiring the subject real estate and office equipment and further for the purpose of expanding her business, known as Wheatcraft Industries.

"5. Wheatcraft Industries, Inc., applied for and obtained a community development block grant loan from the State of Kansas through the City of Gorham.

"6. Under the community development block grant program, the State of Kansas granted money to the City of Gorham, and the City of Gorham loaned that money to Wheatcraft Industries, Inc.

"7. To qualify for the loan, however, Wheatcraft Industries, Inc., was required to acquire additional money from a private source.

"8. In order to obtain the private source money, Wheatcraft Industries, Inc., applied for a line of credit at The Home State Bank, Russell, Kansas.

"9. The Home State Bank approved a line of credit in the sum of $77,000. The conditions upon which said line of credit were approved are outlined in a letter dated May 19, 1987, from W. R. Shaffer, Chairman of the Board of the Home State Bank, Russell, Kansas, and addressed to Joyce Banbury, President, Wheatcraft Industries, Inc. A copy of said letter is attached hereto as Exhibit 1.

"10. As part of its application for a community development block grant loan, Wheatcraft Industries, Inc., prepared a project budget form showing a total project cost of $315,000. The project budget form shows the expected source of funds for the Wheatcraft Industries, Inc., expansion project and the intended disposition of said funds. A copy of the project budget form is attached hereto as Exhibit 2.

"11. Prior to approval by The Home State Bank of the $77,000 line of credit for Wheatcraft Industries, Inc., Joyce Banbury provided W. R. Shaffer with a copy of the block grant proposal which included the specifications for the construction of a building on the subject land prepared by Shade Construction.

"12. The first project funds received by Wheatcraft Industries, Inc., came from The Home State Bank, Russell, Kansas. These first funds in the sum of $45,460 were delivered to Wheatcraft Industries, Inc., on June 16, 1987.

"13. On June 24, 1987, $29,400 of The Home State Bank loan funds were used by Wheatcraft Industries, Inc., to purchase the metal building which was moved to and erected upon the subject real estate.

"14. On or about September 2, 1987, the first block grant loan money was delivered to Wheatcraft Industries, Inc., in the sum of $68,172.52.

Thirty Thousand Dollars of the block grant loan money was used to purchase the subject land.

"15. The deed to the subject land granting the property to Wheatcraft Industries, Inc., and a mortgage from Wheatcraft Industries, Inc., to The Home State Bank covering the subject real estate was delivered to The Home State Bank on or about the 2nd day of September, 1987; however, the mortgage was not recorded because it contained an incorrect legal description.

"16. A survey of the subject land was conducted thereafter and on or about the 22nd day of December, 1987, a new real estate mortgage was signed with the correct legal description and delivered to The Home State Bank. The new mortgage was then recorded on January 12, 1988.

"17. The plaintiff Dale B. Shade, d/b/a Shade Construction, has a mechanic's lien against the subject real estate in the principal sum of $27,982.13. A copy of said mechanic's lien is attached hereto as Exhibit 3.

"18. The plaintiff M & V Floor Covering, Inc., has a mechanic's lien against the subject real estate in the principal sum of $1,458.66. A copy of its mechanic's lien statement is attached hereto as Exhibit 4.

"19. The plaintiff William H. Younger, d/b/a Younger Electric, has a mechanic's lien against the subject real estate in the principal sum of $8,131.00. A copy of its mechanic's lien statement is attached hereto as Exhibit 5.

"20. The defendant Diversified Financial Planners, Inc., is the owner and holder of a real estate mortgage against the subject real estate in the principal sum of $75,223.00. A copy of its mortgage is attached hereto as Exhibit 6.

"21. The defendant Diversified Financial Planners, Inc., is the owner and holder [of] a security interest in the property described in paragraph 2 above. A copy of its security agreement is attached hereto as Exhibit 7.

"22. The defendant City of Gorham, Kansas, is the owner and holder of a real estate mortgage against the subject real estate in the principal sum of $200,000.00. A copy of its mortgage is attached hereto as Exhibit 8.

"23. The defendant City of Gorham, Kansas, is the owner and holder is [sic] a security interest in the property described in paragraph 2 above. A copy of its security agreement is attached hereto as Exhibit 9.

"24. The defendant Jim Rohr, d/b/a Russell Drapery & Carpet Company, has a mechanic's lien against the subject real estate in the principal sum of $1,799.20. A copy of its lien statement is attached hereto as Exhibit 10.

"25. It was the intention of Wheatcraft Industries, Inc., to give The Home State Bank a first mortgage on the subject real estate and to give the City of Gorham, Kansas, a second mortgage on the subject real estate. The City of Gorham consented that its mortgage would be second to the mortgage in favor of The Home State Bank.

"26. Dale B. Shade, d/b/a Shade Construction Company, commenced its work on the subject real estate on October 27, 1987. This work consisted of site preparation and concrete work. Shade Construction Company commenced construction of the metal building on November 18, 1987. William

H. Younger, d/b/a Younger Electric, commenced its work on the subject real estate on October 28, 1987.

"27. The work and materials provided by the mechanic's lienholders was commenced and partially paid for as shown in their respective lien statements."

## The Trial Court Decision

The trial court found that $29,400 of the loan secured by the Diversified mortgage was used to purchase the metal building and that $30,000 of the loan secured by the City's mortgage was used to purchase the 32 acres. Each lender respectively held a purchase money mortgage in the amount stated. Relying on *Noll v. Graham,* 138 Kan. 676, 27 P.2d 277 (1933), the trial court reasoned that "a purchase money mortgage has priority over judgments in all other existing and subsequent claims and liens of every kind against a property."

The trial court noted that all parties intended the City's mortgage to be second to the Diversified mortgage. However, the trial court concluded: "The Court is unable to find from the stipulated facts and the documents that the City of Gorham agreed to assign its purchase money rights and priorities to the Home State Bank [predecessor of Diversified]." Therefore, the trial court held that Diversified has first priority in the amount of $29,400 and that the City has second priority in the amount of $30,000.

The trial court ruled on the mechanics' lienholders' claims and granted judgments in the full amount of each lien: (1) Shade, $27,982.13, third priority; (2) Younger, $8,131, fourth priority; (3) Rohr, $1,799.20, fifth priority; and (4) M&V, $1,458.66, sixth priority.

The trial court granted Diversified seventh priority for $45,833, the balance due on its mortgage, and the City eighth priority for $170,000, the balance due on its mortgage.

## Priority

The trial court and the Court of Appeals relied on *Noll v. Graham,* 138 Kan. 676, in awarding priority to Diversified and the City, who were characterized as purchase money mortgagees.

The Court of Appeals was frank in expressing its difficulty reconciling our holding in *Noll* with K.S.A. 58-2223 (which provides that an unrecorded mortgage is valid only between the parties until it is recorded) and with K.S.A. 60-1101 (which pro-

vides that a mechanic's lien has priority over all liens or encumbrances which are subsequent to the commencement of the mechanic's work). The Court of Appeals reasoned it was bound by our precedent in *Noll,* and that if *Noll* was to be overruled, the task was for this court.

When a case is submitted to the trial court on stipulated facts, as was the case at bar, we are afforded the same opportunity as the trial court to consider the evidence and to determine de novo what the facts establish. *H. Freeman & Son v. Henry's, Inc.,* 239 Kan. 161, 162, 717 P.2d 1049 (1986).

The mechanics' lienholders argue that *Noll* is not supported by statute and should be overruled. They rely on the statutory triad of K.S.A. 60-1101 (the mechanics' lien priority statute), K.S.A. 58-2223 (the recording statute addressing the effect of unrecorded mortgages), and K.S.A. 58-2305 (priority of a purchase money mortgage).

K.S.A. 60-1101 provides, in part, that a mechanic's lien "shall be preferred to all other liens or encumbrances which are subsequent to the commencement of the furnishing of such labor, equipment, materials or supplies."

K.S.A. 58-2223 states: "No such instrument [affecting real estate] in writing shall be valid, except between the parties thereto, and such as have actual notice thereof, until the same shall be deposited with the register of deeds for record."

K.S.A. 58-2305 provides: "A mortgage given by a purchaser to secure the payment of purchase money shall have preference over a prior judgment against such purchaser."

The mechanics' lienholders contend that the purchase money mortgages were not valid against the lienholders because the mortgages were recorded after the mechanics' liens attached. The mechanics' lienholders were not parties to the mortgage. K.S.A. 58-2223. Consequently, as to the mechanics' lienholders, the mortgages are subsequent encumbrances to the commencement of the furnishing of labor, material, and supplies and should be subordinate to the mechanics' liens. K.S.A. 60-1101.

The mechanics' lienholders argue that K.S.A. 58-2305 only grants preference over prior judgments against the purchaser and that mechanics' liens are not prior judgments against the purchaser. We agree.

The mechanics' lienholders also advance a policy argument. *Noll,* they contend, creates an incentive for purchase money mortgage holders not to record. Subsequent mortgagees and mechanics' lienholders will operate at their peril. Purchase money mortgage holders may improve their collateral positions by allowing the owner to improve the property at the expense of the mechanics' lienholders.

Diversified counters with the assertion that *Noll* is controlling and should be followed. Diversified argues that *Noll* is not in conflict with the three statutes relied on by the lienholders because a mechanic's lien can only attach to the interest of the property owner. In the case at bar, the purchase money mortgage was valid as to the property owner, Wheatcraft, before the commencement of work by the mechanics' lienholders. Diversified reasons the mechanics' liens attached to the property subject to the purchase money mortgage.

*Noll* was decided by this court in 1933. Diversified contends that the legislative history of K.S.A. 58-2305 and K.S.A. 58-2223 indicates legislative approval of *Noll.* Diversified reasons that the legislature has failed to amend the statutes, leaving the impression that the legislature agrees with *Noll.* The City argues that *Noll* properly protects the expectations of purchase money lenders. Diversified and the City assert arguments that carry a degree of merit.

Diversified contends, in response to the lienholders' policy argument, that: (1) the purchase money mortgage was recorded as soon as the legal description was corrected; and (2) the mortgage was not withheld from being recorded to gain an unfair advantage.

A mechanic's lien attaches from the date work or construction commences. K.S.A. 60-1101. *Lenexa State Bank & Trust Co. v. Dixon,* 221 Kan. 238, 241, 559 P.2d 776 (1977). A mechanic's lien is an encumbrance in the nature of a statutory mortgage founded upon consent under which the holder parts with valuable consideration. 221 Kan. at 241. A mechanic's lien is superior to a mortgage where construction commences after execution of a mortgage but before the mortgage is recorded and where the mechanic's lienholder had no actual notice of the prior mortgage. See *Davis-Wellcome Mortgage Co. v. Long-Bell Lumber Co.,* 184

Kan. 202, 336 P.2d 463 (1959) (applying G.S. 1949, 67-223, the predecessor to K.S.A. 58-2223). It is clear that a mechanic's lien, that attaches before a nonpurchase money mortgage is recorded, has priority over the mortgage.

The question presented in the case at bar is whether a purchase money mortgage loses its priority to a mechanic's lien that attaches after execution of the mortgage but before the purchase money mortgage is recorded. If the mechanics' lienholders had no actual notice of the prior mortgage, the answer is, "Yes."

We register the reversal of case precedent in the real property area with care and caution. We acknowledge judicial discomfort in our effort to reconcile the conflicting thrusts of the mortgage recording statute, K.S.A. 58-2223, and the mechanic's lien preference statute, K.S.A. 60-1101, on one hand, and our decision in *Noll* on the other. We reason that the statutory signal of legislative intent indicated by K.S.A. 58-2223 and K.S.A. 60-1101 suggests that it is as much the duty of a purchase money mortgagee, as of any other mortgagee, to record promptly to preserve priority over innocent mechanics' lienholders. The lender structuring a loan to be secured by a purchase money mortgage controls the release of funds to the borrower. A timely recording of the mortgage is not an onerous requirement for the protection of priority.

In *Noll*, Graham purchased two lots with the intentions of building houses on them. Graham borrowed the purchase money from an investment company and granted mortgages to secure the loan on July 9, 1931. The mortgages were recorded on July 10, 1931. Construction of the houses commenced on July 7, 1931, before the purchase money mortgages were recorded. We stated that a purchase money mortgage takes precedence over all other existing and subsequent claims and liens of every kind against the mortgagor and held that the investment company's purchase money mortgages had priority over the mechanics' liens.

This court first considered the priority of an unrecorded purchase money mortgage in *Jackson v. Reid*, 30 Kan. 10, 1 Pac. 308 (1883).

"By statute a mortgage for the purchase-money has preference over a prior judgment. (Comp. Laws 1879, p. 555, § 4.) But the fact that a mortgage is given for purchase-money does not place it outside the provisions of the

registry act, or give it a priority to which it would not be entitled under said act." 30 Kan. at 14-15.

In *Kuehn v. National Bank,* 117 Kan. 717, 232 Pac. 1060 (1925), we qualified the rule stated in *Jackson.*

"The weight of authority seems to support the view that a purchase-money mortgage because of its character as such has priority over another, which is not defeated by the mere circumstance of the other reaching the register first, where the purchase-money mortgage is recorded without any unnecessary delay after its delivery. But if the holder of a purchase-money mortgage voluntarily withholds it from record and in the meantime money is lent to one having no notice of it, upon another mortgage, no reason is apparent why the mortgage first recorded should not have priority in accordance with the ordinary rules with regard to recording instruments affecting real estate." 117 Kan. at 719.

Under *Kuehn,* the question is whether the purchase money mortgage was recorded without "any unnecessary delay." Any delay in recording is a question of fact.

The stipulated facts in the case at bar provide that the deed and the mortgage were delivered to the Home State Bank on September 2, 1987. The mortgage was not recorded because it contained an incorrect legal description. A survey of the land was conducted and a corrected real estate mortgage was delivered to the Bank on December 22, 1987, and recorded on January 12, 1988.

We need not determine whether 4 months and 20 days constitutes unnecessary delay under the *Kuehn* rationale. Our overruling of *Noll* controls.

Real estate texts suggest the prevailing view is that a purchase money mortgage may lose priority under the recording acts. See Nelson & Whitman, Real Estate Finance Law § 9.2, pp.680-81 (2d ed. 1985); Kratovil & Werner, Modern Mortgage Law and Practice § 19.04, pp. 254-55 (2d ed. 1988). See Annot., 72 A.L.R. 1516, supplemented by Annot., 73 A.L.R.2d 1407, and Annot., 137 A.L.R. 571.

We have previously expressed doubt on the priority of an unrecorded purchase money mortgage over a mechanic's lien. *Home State Bank v. P.B. Hoidale Co.,* 239 Kan. 165, 718 P.2d 292 (1986). In *Home State Bank,* Save-Time Stores, Inc., mortgagor, executed three mortgages to Home State Bank, mortgagee, one in May 1982 and two in August 1982. The mortgages were

not recorded until May 1983. Hoidale furnished materials and labor to Save-Time between November 1982 and January 1983 before the mortgages were recorded. Home State Bank filed an action to foreclose its mortgages in June 1983. The trial court found that two of the Home State Bank mortgages were purchase money mortgages entitled to priority over Hoidale's mechanic's lien. Hoidale appealed. We held that Hoidale had waived its right to enforce its lien. We observed:

"Finally, we do not reach Hoidale's contention that the Bank's mortgages come within the provisions of the Kansas recording acts, K.S.A. 58-2222 and 58-2223, and being unrecorded for so many months do not have priority over subsequently arising and perfected mechanics' liens. We have doubt about the priority of unrecorded mortgages, but we do not decide the issue." 239 Kan. at 169.

We note that, under K.S.A. 58-2223, unrecorded mortgages would be valid against mechanics' lienholders if the lienholders had actual notice of the mortgages. Neither Diversified nor the City asserts that the lienholders had actual notice of mortgages.

## Estoppel

Shade and Younger, the mechanics' lienholders, argue that Home State Bank and the City had knowledge of the improvements to be made on the property, which estops the mortgagees from asserting priority over the mechanics' liens.

Neither the trial court nor the Court of Appeals specifically addressed this issue. Because of our disposition of the case, there is no need for us to do so.

## The Diversified/City Agreement

The City argues that Diversified's mortgage is not a purchase money mortgage because $29,400 of the Diversified mortgage was used to purchase a metal building which was moved to and erected upon the land. Funds from the Diversified mortgage were used to purchase personal property, not real estate. The City contends that its purchase money mortgage should be given priority over Diversified's mortgage.

Diversified counters with the observation that the real estate to be sold upon foreclosure consists of a metal building and 32 acres purchased for $29,400 and $30,000 respectively. Consequently, its mortgage is a purchase money mortgage.

We need not resolve the City's contention. The City agreed to subordinate its mortgage to Diversified's mortgage. The City's purchase money mortgage should not be prior to Diversified's mortgage.

All parties intended that the City's mortgage would be second to the mortgage in favor of Home State Bank (stipulation, para. 25). The City consented to this second position.

The trial court concluded it was "unable to find from the stipulated facts and the documents that the City of Gorham agreed to assign its purchase money rights and priorities to Home State Bank."

We do not agree. The City agreed to subordinate its mortgage to Home State Bank. The City's mortgage was included in the stipulation. The mortgage recites, in part, "This is a second real estate mortgage subject only to a first real estate mortgage to The Home State Bank, Russell, Kansas, as recorded in Book 114, at page 77, in the office of the Register of Deeds of Russell County, Kansas." The City should not now be able to assert a priority over Home State Bank. The City's agreement to subordinate its mortgage to Home State Bank was unqualified. The unqualified subordination agreement was sufficient to subordinate *all* of the City's mortgage and not just the portion that was not a purchase money mortgage. Diversified's mortgage is prior to *all* of the City's mortgage. The City is bound by its stipulation. The City is precluded on appeal from contradicting the stipulation placed before the trial court. *Arrowhead Constr. Co. v. Essex Corp.*, 233 Kan. 241, Syl. ¶ 4, 662 P.2d 1195 (1983), *disapproved on other grounds Wichita Sheet Metal Supply, Inc., v. Dahlstrom & Ferrell Constr. Co.*, 246 Kan. 557, 792 P.2d 1043 (1990).

We have acknowledged the priority of the mechanics' lienholders; consequently, it is necessary for us to address the status of M&V and Rohr, mechanics' lienholders who did not appeal.

The trial court entered judgment for all mechanics' lienholders in stated amounts and then assigned sequential priority. We hold that the nonappealing mechanics' lienholders, M&V and Rohr, benefit from our ruling on priority.

The judgment priority rank order, assigned by the trial court, was as follows:

First, Diversified, $29,400; second, the City, $30,000; third, Shade, $27,982.13; fourth, Younger, $8,131; fifth, Rohr, $1,799.20; sixth, M&V, $1,458.66; seventh, the balance of the Diversified mortgage, $45,833; and eighth, the balance of the City's mortgage, $170,000, all with interest as specified.

We assign first priority to the mechanics' lienholders, including Rohr and M&V, on a pro rata basis. K.S.A. 60-1101.

We recognize the general rule that a nonappealing party is bound by the decision of the lower court. 5B C.J.S., Appeal and Error § 1952. We also recognize an exception and conclude that the exception is applicable to the case at bar. When there are multiple plaintiffs or defendants in an action and when the rights of all parties are interwoven, or when the ruling of the trial court, reversed on appeal, affects the rights of all parties, a nonappealing party is entitled to the benefit of the appellate holding. *Shelter Mut. Ins. Co. v. Briggs,* 793 S.W.2d 862, 864 (Mo. 1990); *Kuhn v. Kuhn,* 301 N.W.2d 148, 151 (N.D. 1981).

In the instant case, the interests of the nonappealing mechanics' lienholders are so interwoven with those of Shade and Younger and with the mortgagees, Diversified and the City, that they are inseparable.

The trial court is directed to enter judgment: (1) for the four mechanics' lienholders, a first priority, for the full amount of their liens with distribution to be made on a pro rata basis; (2) for Diversified, a second priority, for the full amount of its mortgage; and (3) for the City, a third priority, for the full amount of its mortgage.

The priority holding, announced herein, between a purchase money mortgagee and a mechanic's lienholder who had no actual notice of the prior mortgage and whose lien attached after execution but before recording of the purchase money mortgage, shall apply prospectively from the date of this opinion.

Reversed and remanded with directions.