(924 P.2d 1288)

No. 74,586

WILLIAM F. FRITSCHEN, *Appellee*, v. VERA WANEK and GERALD PREDIGER, *Appellants*.

Opinion filed October 18, 1996.

*Michael S. Holland*, of Russell, for the appellants.

*Kenneth L. Cole*, of Woelk and Cole, of Russell, for the appellee.

Before LEWIS, P.J., GERNON, J., and DAVID W. KENNEDY, District Judge, assigned.

LEWIS, J.: This is a quiet title action in which the relevant facts occurred from 1937 to 1941. The plaintiff is the owner of the following described real estate located in Russell County: "[t]he Northwest Quarter (NW/4) of Section Sixteen (16), Township Fourteen (14) South, Range Twelve (12) West, Russell County, Kansas."

There has been production of oil and gas from this property since 1981. The plaintiff filed this action to quiet his title to the royalty interests in the subject property. The defendants maintain that they own royalty interests in the production described above, which vested in 1943. The trial court granted summary judgment to the plaintiff on the theory that any royalty interests claimed by

the defendants are void because they violated the rule against perpetuities.

In 1937, Robert E. Kaps (decedent) died testate. At the time of his death, he owned not only the real estate involved in this action but several other quarter sections of real estate in Russell County and one quarter in Ness County.

The will of the decedent, in Paragraphs Second through Eleventh, devised and bequeathed to each of his children an "undivided one-sixty-fourth of all the Oil, Gas and other Minerals produced and saved from the following described land prior to May 26, 1951."

Paragraph Second of the will of the decedent described four quarters of real estate in Russell County and one in Ness County. Included in the real estate described in Paragraph Second of the will is the real estate which is the subject of this action. Also included is the southwest quarter of 32-14-12, which is vital in the determination of issues raised in this action. The will went on to devise the fee simple interest in each quarter section to a separate child subject to the joint royalty interests bequeathed to each child in all the real estate in Paragraphs Second through Eleventh of the will.

The devisees and legatees of the decedent all entered into two agreements relative to the joint royalty interests created by the will. The first agreement was entered into in 1938 and the second in 1941. These agreements recite that the parties "desire to forever settle any possibility of a dispute or misunderstanding as to the intention of the testator, Robert E. Kaps, deceased, in willing and bequeathing an undivided one-sixty-fourth ($\frac{1}{64}$) interest in all of the oil, gas and other minerals." This lawsuit appears to be proof that despite their efforts, the parties were not entirely successful in eliminating "all misunderstandings" concerning the joint royalty interests created.

As we have pointed out, there were two agreements entered into on this subject. Since the 1941 agreement basically replaced the earlier contract between the parties, it is on that agreement which we must focus.

The 1941 agreement reads in pertinent part as follows:

"AND WHEREAS, under Paragraphs SECOND to ELEVENTH, inclusive, the said decedent, Robert E. Kaps, willed and bequeathed to certain parties to this agreement certain interests in the fee title and certain interests in the oil, gas and other mineral rights in and to the following described premises situated in Russell County, Kansas, to-wit:

North East Quarter of Section Seventeen, in Township Fourteen South, in Range Twelve West of the Sixth P. M., North West Quarter of Section Seventeen in Township Thirteen South, in Range Thirteen West of the 6th P. M., North West Quarter of Section Sixteen, in Township Fourteen South, in Range Twelve West of the 6th P. M., South West Quarter of Section Thirty Two, in Township Fourteen South, in Range Twelve West of the 6th P. M.,

together with the following described real estate situated in Ness County, Kansas, to-wit:

South East Quarter of Section Fifteen, in Township Seventeen South, in Range Twenty Two West of the 6th P. M.

"AND WHEREAS, under the above numbered paragraphs of said Will are set forth bequests to each of the following persons: Carl W. Kaps, William F. Kaps, Della L. Fritschen, Elsie Prediger and Freda Marie Major, an undivided one-sixty-fourth (1/64) of all of the oil, gas and other minerals produced and saved prior to May 26, 1951, from all of the above described real estate, said interest in oil, gas and other minerals to pass to the remaining devisees not given the fee simple title to the respective tracts hereinbefore referred to.

"AND WHEREAS, the recitation in said will of an undivided one-sixty-fourth (1/64) of all the oil, gas and other minerals has led to a dispute and misunderstanding as to the exact fractional interest the testator desired to will and bequeath, that is, whether the testator desired to convey a one-sixty-fourth (1/64) of all his royalty interest or a one-sixty-fourth (1/64) of all of the oil and gas including both the royalty interest and leasehold working interest itself.

"AND WHEREAS, the parties to this agreement desire to forever settle any possibility of a dispute or misunderstanding as to the intention of the testator, Robert E. Kaps, deceased, in willing and bequeathing an undivided one-sixty-fourth (1/64) interest in all of the oil, gas and other minerals and for the purpose of clarifying these bequests, said parties have agreed that the interpretation of said will and the intention of the testator at the time of the making of said will was to convey an undivided one-eighth (1/8) of the royalty interest or twenty (20) royalty acres on each Quarter (1/4) Section of One hundred-sixty (160) acres, wherever the bequest of 'an undivided one-sixty-fourth (1/64) of all the oil, gas and other minerals produced and saved' is used.

"AND WHEREAS, the parties to this agreement further desire to expand and enlarge the oil and gas royalty rights hereinbefore referred to beyond the time designated in the Will of Robert E. Kaps, deceased, *to continue and be in full force and effect until April 1, 1956, and as long thereafter as oil or gas is contin-*

uously produced from these premises or any portion thereof or said property is being continuously developed and operated.

"AND WHEREAS, the parties to this agreement further desire that in the participation of oil and gas royalty rights, none of the parties interested except the owner of the fee simple title to each respective tract shall have any interest in or right to any of the oil and gas lease bonuses, rentals or delayed rental payments.

"NOW THEREFORE, for and in consideration of the covenants hereinbefore and hereinafter stipulated and set forth, the parties to this agreement mutually contract and agree that:

"1. Under the Will of Robert E. Kaps, deceased, wherever the bequest or statement 'an undivided one-sixty-fourth (1/64) of all of the oil and gas or other minerals produced or saved prior to May 1, 1951' is used, it is understood that such a statement shall bequeath and devise an undivided one-eighth (1/8) royalty interest or twenty (20) royalty acres, undivided, under each Quarter (1/4) Section to such lands as are described, set forth and referred to under paragraphs SECOND to ELEVENTH, inclusive, and the same shall be enlarged and expanded to *provide for such bequest or bequests to continue and be effective until April 1, 1956, and as long thereafter as oil or gas is continuously produced from these premises or any portion thereof or said property is being continuously developed and operated.*

"2. That the interest in the oil, gas and other minerals provided for set forth and referred to under Paragraphs SECOND to ELEVENTH, inclusive, of the Will of Robert E. Kaps, deceased, shall convey only the royalty interest in the oil, gas or other minerals actually produced and shall not include any interest in the oil and gas lease bonuses, rentals or delayed rentals which may now or hereafter accrue but the same shall be the exclusive property and interest of the fee simple title owner of each of the respective tracts." (Emphasis added.)

The resolution of the issues presented on this appeal rests on our interpretation of the language quoted above.

We begin by noting that all the parties agree that the interest created by the decedent's will and by the parties' agreement in 1941 were "royalty" interests and not "mineral" interests. Generally, this is of some significance insofar as the rule against perpetuities is concerned. Royalty interests are personal property that ordinarily come into being upon the execution of an oil and gas lease, whereas mineral interests are interests in real estate which are vested immediately when created and which remain vested for whatever term is stipulated. The rule against perpetuities is a rule which works to void interests which do not "vest" within a certain time. It is, therefore, more likely to apply to something like a royalty

interest than it is to a mineral interest because of the vesting of two interests. In this case, however, there is no significance between a "royalty interest" and a "mineral interest" in the application of the rule against perpetuities, despite the contrary argument of the plaintiff.

The parties submitted the decision in this case to the trial court on stipulated facts. "When a case is submitted to the trial court on stipulated facts . . . we are afforded the same opportunity as the trial court to consider the evidence and to determine de novo what the facts establish." *Shade v. Wheatcraft Industries, Inc.*, 248 Kan. 531, 536, 809 P.2d 538 (1991).

In addition, we note that this decision rests on the construction of a written agreement. "Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect." *Federal Land Bank of Wichita v. Krug*, 253 Kan. 307, Syl. ¶ 2, 856 P.2d 111 (1993).

As a result of our standard of review in cases of this nature, we are able to resolve this matter by giving our own construction to the written agreement of the parties.

The trial court resolved this action in favor of the plaintiff by stating:

"The Court, from a study of this case finds that there is a royalty interest involved instead of a mineral interest on the land in question. The term royalty interest was to extend until April 1, 1956, and as long or [sic] after as oil and gas is continually produced from the premises or any part thereof. On April 1, 1956, there was no production on subject property nor was subject property under oil and gas lease and as a result thereof the Court believes and finds that since there was no production and no lease that there was an end to all interest by the Defendants herein to this matter and finds that the Plaintiff is entitled to quieting his title and [sic] the subject property because of [sic] the purported interest of the Defendants and their issue became void as a violation of the rule against perpetuity [sic] on April 1, 1956, and because there was no oil and gas production on the subject property."

While most of what the trial court said is factually accurate, it failed to deal with the principal argument of the defendants, which we find compelling.

At the time of the 1941 agreement, there was apparently no production of oil and gas on any of the six quarters of real estate described, and it is unknown whether any of these quarter sections were governed by an oil and gas lease. However, since December 3, 1943, there has been continuous production of oil and gas from the southwest quarter of 32-14-12. As we construe the 1941 agreement of the parties, the defendants' royalty interests in all of the real estate described vested in 1943, when production was obtained from the southwest quarter of 32-14-12, and it has remained vested as a result of that production since that time. Accordingly, we reverse the decision of the trial court in favor of the plaintiff and remand with directions that judgment be entered in favor of the defendants.

The will of the decedent left each devisee and legatee a royalty interest in all six quarters described in the will. Paragraph Second of the will bequeathed to Carl W. Kaps an undivided ⅟₆₄ interest in all of the "oil, gas and other minerals produced and saved" from all six quarters described, including the southwest quarter of 32-14-12 as well as the real estate which is the subject of this action.

Paragraphs Third through Eleventh make essentially the same bequests to the other devisees and legatees.

The agreement of 1941 relates to the same real estate described in Paragraph Second of the decedent's will. In that agreement, all of the decedent's devisees and legatees agreed that the royalty interests each received under the will of the decedent should be construed to be "an undivided one-eighth (⅛) of the royalty interest or twenty (20) royalty acres on each Quarter Section of One hundred-sixty (160) acres." The parties stipulated that the royalty interest was to last until April 1, 1956, (well within the period of the rule against perpetuities) and *"as long thereafter as oil and gas is continuously produced from these premises or any portion thereof or said property is being continuously developed and operated."* (Emphasis added.) It is readily apparent, and we hold, that both the southwest quarter of 32-14-12 and the real estate which is the subject of this action are part of the "premises" described above and that production on the southwest quarter of 32-14-12 is production from "these premises" or "any portion thereof." We

hold that production on the southwest quarter of 32-14-12 vested the royalty interests of the defendants in all of the real estate described in the 1941 agreement, including the real estate which is the subject matter of this action. Those royalty interests will remain vested for so long as there is production from any of the six quarters described in the agreement of 1941.

The rule against perpetuities has no application in this lawsuit. That rule bears little relation to modern business practices, and we are told that we should strive to interpret a document in a manner which will avoid its application:

" 'The rule against perpetuities precludes the creation of any future interest in property which does not necessarily vest within twenty-one years after a life or lives presently in being, plus the period of gestation, where gestation is in fact taking place.' [Citations omitted.] 'In ruling upon whether a future interest violates the rule against perpetuities, speculation concerning the probabilities of various subsequent developments is not indulged in by the courts, but it is a sufficient violation of the rule if an interest might possibly vest beyond the period permitted.' [Citation omitted.]

. . . .

". . . The rule was first developed 'to prevent the practice of tying up family property for generations and thereby creating unreasonable restraints upon the alienation of property.' [Citation omitted.]

". . . However, modern courts have recognized that the rule bears little relation to modern business practices and thus have limited application of the rule where possible . . . . [Citation omitted.] 'A document should be interpreted where feasible to avoid the conclusion that it violates the rule against perpetuities.' [Citations omitted.]" *Gore v. Beren*, 254 Kan. 418, 428-29, 867 P.2d 330 (1994).

Our interpretation of the parties' 1941 agreement is in harmony with the rules stated above.

We note that the language used by the parties in the 1941 agreement is identical to the language found in numerous oil and gas leases. That language was designed to hold all of the real estate described in a lease by virtue of production on any portion of that real estate. In *Baker v. Hugoton Production Co.*, 182 Kan. 210, 212-13, 320 P.2d 772 (1958), our Supreme Court, in reference to very similar language, said:

"The instrument grants a base or determinable fee in the oil, gas and other minerals in place in the 3,630 acres described therein. The grant is for a term of twenty years and as long thereafter as oil, gas, or either of them, are being pro-

duced from *said land*. The words 'said land' refer to the 3,630 acres described in the granting clause. Production on any part of that acreage was production from *said land*, the legal effect of which was that the mineral interest was perpetuated and extended as to the *entire* acreage. (*Cowman v. Phillips Petroleum Co.*, 142 Kan. 762, 51 P.2d 988, and *Wilson v. Holm*, [164 Kan. 229, 237, 188 P.2d 899].)

"It follows that plaintiff Baker's interest as to the 680 acres, upon which there was no production during the primary term, was continued and perpetuated by virtue of production had upon the 2,950 acres during the primary term, and he is entitled to receive one-fourth of the gas royalties from the 680 acres."

We recognize that the court in *Baker* was apparently dealing with a mineral interest other than a royalty interest. That, however, appears irrelevant. Our decision in this case is in harmony with the court's reasoning in *Baker*. The plaintiff's quarter section in this case was part of "the premises" described in the 1941 agreement, and production on any part of those premises vested the royalty interests of all of the parties in all of the acreage described. The fact is that production was obtained on the premises in 1943 and that the royalty interests of the defendants have been vested since that time and will remain vested so long as there is any production "from the premises or any portion thereof."

The plaintiff argues that since the quarter section which is the subject of this action was not covered by an oil and gas lease prior to April 1, 1956, the royalty interests of the parties to the agreement never vested in this quarter section. We disagree. It was not necessary that an oil and gas lease be executed on all of the real estate involved in this action for the royalty interests to vest. Those royalty interests vested at the time production was obtained on any portion of the premises. As we have pointed out above, production was obtained on the premises in 1943, and the royalty interests vested at that time.

Since the royalty interests in this case vested in 1943 with production on the southwest quarter of 32-14-12, it follows that the rule against perpetuities was not violated by the 1941 agreement. We reverse the judgment entered in favor of the plaintiff and remand with directions to the trial court to enter judgment on behalf of the defendants.

Reversed and remanded with directions.